20428

In the Matter of Winston W. VAUGHT, Respondent.
(235 S. E. (2d) 115)

*Messrs. Daniel R. McLeod, Atty. Gen., A. Camden Lewis, Richard B. Kale, Jr., George C. Beighley and Perry M. Buckner, Asst. Attys. Gen.,* of Columbia, for Complainant.

*J. M. Long, Jr., Esq.,* of Conway, *for Respondent.*

May 13, 1977.

*Per Curiam:*

Respondent was charged with professional misconduct in connection with his dealings with a Mr. Robert Boyd and a Mrs. Mildred Boyd (presently Mrs. Mildred Mitchum), who were clients of his at various times over a period of years. The Panel's recommendation of a private reprimand was adopted by the Board of Commissioners on Grievances and Discipline. The matter is before the Court pursuant to a petition for certification made by the Secretary of the Board of Commissioners.

The record shows that Mr. and Mrs. Boyd are neither educated nor sophisticated people. A medical report on Mr. Boyd was introduced which recognized that he had a second grade education and was mildly retarded. Mrs. Boyd, the complaining witness, had only a seventh grade education, and, prior to the period involved in this proceeding, had been in an automobile accident, in which she sustained a head injury which she said affected her memory. Mrs. Boyd received a substantial amount of money in a settlement arising from the accident which was negotiated before the events with which this proceeding is concerned.

Respondent represented Robert Boyd in the acquisition of a subdivided tract of land in Brunswick County, North Carolina. The lots were conveyed to Mr. Boyd by a doctor from Horry County by deed dated December 24, 1962. Mr. Boyd executed a promissory note and deed of trust to the vendor representing a portion of the purchase price. On January 25, 1963, Mildred Boyd paid $13,065 to the doctor, thereby paying the indebtedness in full.

Robert Boyd and Mildred Boyd, as the wife of the grantor, conveyed a portion of the Brunswick County property, comprising some twenty (20) lots, to respondent by deed dated May 31, 1963. On the date of the conveyance, respondent executed an unsecured promissory note in the amount of

$14,400 to Robert M. Boyd, representing all or a substantial part of the purchase price for the property. Respondent testified that he did not give Mr. Boyd a deed of trust or mortgage at the time of the purchase of the lots because he told Mr. Boyd that he had to have them unencumbered so that he would be able to sell them when he got a sale for them.

Approximately a month after the purchase, respondent mortgaged a portion of the property and sold one of the lots. He testified that he paid $5,000 to Robert Boyd at that time, because the latter needed the money, although the first annual installment $2,880 on the unsecured note was not due until October of 1964. Respondent produced no record to verify the $5,000 payment. The respondent testified that he subsequently sold a substantial portion of the original tract for $7,500 and an individual lot for $3,000. The record shows that the payment schedule on the note was not followed, that respondent's records prior to 1970 constitute merely his own recollection, and that payments of small amounts were being made as late as August, of 1973.

The complaint does not charge that respondent's actions concerning the unsecured note placed his individual interests above those of Robert Boyd. However, the circumstances surrounding the purchase go toward his improper dealings in respect to Mrs. Boyd which are the subject of this proceeding. The Panel found that the respondent's conduct in the purchase of Mr. Boyd's property was at the very least questionable under the circumstances disclosed by the record, and noted that a lawyer should scrupulously examine the fairness of such a transaction.

On August 19, 1963, respondent entered into a retainer agreement with Mildred Boyd whereby he was employed to institute legal proceedings against Robert Boyd to recover money furnished by Mildred Boyd to her husband for, amnog other things, purchase of the land in Brunswick County. The acceptance of this employment placed respond-

ent in a conflict of interest situation which is aggravated by the fact that his conduct in connection with the unsecured note used in the purchase of the Brunswick County lots constituted overreaching of his client Mr. Boyd. When he accepted employment from Mrs. Boyd, his actions concerning the real estate transaction and the unsecured note constituted advantage taking in regard to her interests as well.

The relief for which Mrs. Boyd employed the respondent lay in the unsecured obligation of the respondent to her husband. Respondent would be the one who would give Mrs. Boyd her remedy if she prevailed in the suit. The acceptance of the employment created a serious conflict of interest in violation of Disciplinary Rule DR 5-101.

Respondent never instituted a suit against Mr. Boyd on Mrs. Boyd's behalf to obtain the return of the money used in the purchase of the Brunswick lots. He testified that the Boyds reconciled certain domestic problems which they had been experiencing and it was his understanding that she wanted to abandon the action.

Respondent admitted that he did not make payments on the unsecured note according to the specified schedule, but would alternately pay either Mr. or Mrs. Boyd at various times. In 1968, Mildred Boyd, who had remarried and went by the name of Mildred Mitchum, contacted attorney Edward K. Pritchard in reference to her prior dealings with respondent. Mr. Pritchard wrote respondent a letter, dated September 3, 1968, referring to the note which respondent gave to Mr. Boyd and Mrs. Boyd's employment contract with respondent in connection with her claims in the Brunswick County transaction. The letter requested that respondent advise as to the status of the matter and what steps were taken to get the note and debt "set over" to Mrs. Boyd (Mitchum). Respondent gave no response to that letter and did not respond to two more letters, dated December 16, 1968 and February 20, 1969, which requested a reply to the

first letter. Mr. Pritchard testified that he subsequently turned the matter over to the Grievance Committee.

Respondent testified that in April of 1973 he wrote a letter to Mrs. Boyd (Mitchum) requesting that she contact him. This letter was written subsequent to a communication from a member of the Grievance Committee. As a result of the contract Mrs. Mildred Boyd (Mitchum) executed the following "release", for a consideration of $600, which was prepared in respondent's office:

"STATE OF SOUTH CAROLINA  )
COUNTY OF HORRY            }

Several years ago I, the undersigned, MILDRED J. BOYD (now MILDRED J. MITCHUM) employed WINSTON W. VAUGHT to recover from my then husband, ROBERT M. BOYD, money that I furnished to purchase land to which ROBERT M. BOYD took title. After employing WINSTON W. VAUGHT for the aforesaid purpose, I went back to live with ROBERT M. BOYD, and ROBERT M. BOYD and I together executed a deed conveying the aforesaid land to WINSTON W. VAUGHT. This is to certify that I have been paid in full, and WINSTON W. VAUGHT does not owe me any money on the aforesaid transaction.

This statement is given freely and voluntarily.

DATED at Conway, South Carolina, April 13, 1973.

> S/Mildred J. Boyd
> MILDRED J. BOYD
>
> S/Mildred J. Mitchum
> MILDRED J. MITCHUM

WITNESSES:
S/Willie R. Mitchum
S/Jean S. Johnson"

Respondent did not get the note back at the time of the release.

The Panel rejected the charge in the complaint that the release represented a negotiation of an agreement by the respondent with a party known to be represented by other counsel. We observe that the inference could be drawn, from Mr. Pritchard's letters and the contact of the Grievance Committee, that respondent knew that Mr. Pritchard represented Mrs. Boyd (Mitchum) and should have given him notice of the release negotiations. Although we will not overturn the finding of the Panel on this issue as it was supported by other evidence in the record, we deem it proper to hold that the circumstances surrounding the release gave the appearance of impropriety and constituted unprofessional conduct.

Respondent testified that when the release was negotiated, he did not know exactly how much he owed on the note but that it was under $1,000. This admission raised the issue of whether the respondent failed to properly account to Mrs. Boyd (Mitchum). Respondent was given a chance to produce records illustrating that the note had been paid in full. The affidavit submitted illustrates that respondent kept extremely poor records in regard to his indebtedness on the unsecured note, and is inconclusive on whether payment in full has been made.

The record as a whole shows that the respondent generally put his individual interests ahead of those of his client, Mrs. Boyd (Mitchum), as alleged in the complaint. This is particularly disturbing when it is considered that Mrs. Boyd (Mitchum) is a person highly susceptible to overreaching due to her poor educational background and inability to protect her own interests. Due to the total absence of verified records of payments to the Boyds on the unsecured note and respondent's willingness to accept employment from Mrs. Boyd under circumstances which created a serious conflict of interest, we have no hesitancy in finding the respondent guilty of misconduct in the performance of his professional responsibilities.

The long delay in processing the charges against the respondent has given the Court considerable concern and, but for the delay, the Court might have elected to impose a more stringent disciplinary sanction. While we bear in mind the serious nature of the offenses shown by this record, we have concluded to withhold the imposition of a more extreme disciplinary penalty. However, without hesitation, we hereby strongly and publicly reprimand the respondent for his unprofessional conduct. This opinion is to be published in the Reports of this Court.

LITTLEJOHN, Justice, concurring.

I concur in the finding of misconduct in the performance of professional responsibilities in my view, the appropriate sanction is indefinite suspension.